Dan KALO, Plaintiff,

v.

MOEN INCORPORATED, Defendant.

No. 1:00CV0063.

United States District Court,
N.D. Ohio,
Eastern Division.

April 28, 2000.

Caryn M. Groedel, Cleveland, OH, for Dan Kalo, plaintiff.

M. Neal Rains, Thomas Jeffrey Piatak, Arter & Hadden, Cleveland, OH, for Moen Inc., defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Dan Kalo, the plaintiff, sued his former employer, Moen Incorporated ("Moen"), in the Court of Common Pleas in Lorain County, Ohio. Kalo alleges that Moen wrongfully terminated him in violation of (1) Ohio law prohibiting age discrimination; (2) Ohio law prohibiting disability discrimination; and (3) Ohio public policy disfavoring termination for the purposes of preventing an employee's receipt of medical, pension, and other benefits. Moen removed the case to federal court on the ground that Kalo's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Kalo has filed a motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c) (doc. # 5), and Moen has opposed that motion. Because ERISA completely preempts Kalo's third cause of action, this Court denies the motion to remand, and orders Kalo to file an amended complaint within ten business days of the date of this order.

## I. Background

According to the complaint that Kalo filed in state court, Moen employed Kalo for twenty-eight years prior to his discharge. Kalo worked as a manufacturing coach at a Moen plant located in Elyria, Ohio. During the course of his employment, Kalo experienced a number of medical problems. In 1981, Kalo sustained injuries at work that continue to cause him pain and discomfort at the present time. Kalo underwent surgery for hernia repairs in 1985, 1986, and 1987. In 1997, surgery was performed on his right foot to correct "Morton's Neuroma" and tarsal tunnel damage.

Kalo underwent surgery on both of his feet in 1999. Subsequently, his physician imposed several restrictions on Kalo's em-

ployment, "including being limited to an eight hour work day to be spent in two hour standing and sitting intervals." Complaint, at ¶ 12. Kalo received short-term disability benefits for his foot conditions while he was employed at Moen. In 1999, he filed an accident report, and discussed the possibility of taking disability leave with a number of Moen managers and employees.

In approximately August of 1999, Kalo asked another Moen employee to weld some metal into a charcoal grill for his personal use. Moen employees referred to this type of activity as a "government job." On September 8, 1999, Moen called Kalo into a meeting and informed him that he had violated company policy by having another employee remove company property from the premises for his personal use. Moen suspended Kalo for two days and, thereafter, told him that he would be terminated if he failed to resign. Kalo, feeling coerced, chose to resign. According to Kalo, "government jobs" were routinely performed at Moen, and the company did not discipline younger workers for engaging in similar conduct. Kalo was fifty-three years old at the time of his discharge. In addition, Kalo was "the last employee at Moen Elyria who was entitled to receive full health and medical benefits from the date of retirement until his death." Complaint, at ¶ 22. Kalo further alleges that at the time of his discharge, he was only one year away from early retirement eligibility, and only six years away from being one hundred percent fully vested in his pension plan. "[I]n fact, his pension benefits would have increased by six percent (6%) per year over the next six years, had he not been forced to resign from Defendant Moen." Id. at ¶ 24.

Kalo sued Moen in state court on December 2, 1999, seeking to recover compensatory and equitable damages for (1) age discrimination under Ohio law; (2) handicap discrimination under Ohio law; and (3) violation of Ohio public policy. On January 7, 2000, Moen removed the case to federal court on the ground that ERISA completely preempts Kalo's claims. Kalo has filed a motion to remand the case, and Moen has opposed that motion.

## II.

This case requires the Court to trudge through the quagmire that is ERISA preemption law. Prior to determining whether ERISA completely preempts Kalo's claims, it is helpful to discuss the framework for removal jurisdiction under ERISA.

### A. ERISA and Removal Jurisdiction

Title 28, United States Code, Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court...." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over actions arising under the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 1331. In most cases, a defendant may remove a case on the basis of federal-question jurisdiction only when the presence of a federal claim is apparent on the face of the complaint. This is known as the "well-pleaded complaint rule." See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.") (citing Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Because a federal defense to a state cause of action does not appear on the face of a plaintiff's complaint, such a defense (including the defense of federal preemption) ordinarily is insufficient to confer removal jurisdiction upon a federal court. See Metropolitan Life, 481 U.S. at 63, 107 S.Ct. 1542.

However, courts have carved out exceptions to the well-pleaded complaint

rule for those extraordinary situations in which Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. 1542. In *Metropolitan Life*, the Supreme Court concluded that Congress intended the civil enforcement provisions of ERISA—that is, the provisions of 29 U.S.C. § 1132(a)—to have such a completely preemptive effect. *Id.* at 66, 107 S.Ct. 1542. Thus, a state cause of action that constitutes a claim under § 1132(a) is completely preempted by ERISA, and, accordingly, may be removed to federal court. *Id.* at 66–67, 107 S.Ct. 1542.

In *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir.1995) (en banc), the leading case in this Circuit on complete ERISA preemption, the Sixth Circuit detailed the distinction between "complete preemption" pursuant to *Metropolitan Life*, and what often is called "ordinary" or "conflict" preemption pursuant to 29 U.S.C. § 1144. While § 1144(a) permits ERISA to preempt state laws that "relate to" an ERISA plan, that section does not, by itself, create a federal cause action for purposes of removal jurisdiction. *Warner*, 46 F.3d at 534; *see also Metropolitan Life*, 481 U.S. at 64, 107 S.Ct. 1542. In contrast, when § 1132(a) completely preempts (i.e., "displaces") a state claim, that claim is deemed federal in character and removable.

Because both *Warner* and *Metropolitan Life* involved claims that were arguably covered by § 1132(a)(1)(B), some confusion has arisen as to whether the other provisions of § 1132(a) have the same completely preemptive effect as subsection 1132(a)(1)(B). This Court agrees with the growing number of cases which find that any § 1132(a) claim completely preempts a state cause of action. *See, e.g., C.C. Mid West, Inc., v. McDougall,* 990 F.Supp. 914, 920 (E.D.Mich.1998) ("federal courts possess [removal] jurisdiction over all claims originating under § 1132(a), and not just § 1132(a)(1)(B)"). A close reading of *Metropolitan Life* reveals that the Supreme Court considered, and applied its holding to, claims failing within the entire scope of § 1132(a). *See, e.g., Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542 ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court"). Moreover, as the *C.C. Mid West* court observed, the tendency of many courts to restrict their language to § 1132(a)(1)(B) "is no doubt attributable to the fact that most [ERISA] cases arise under that section." *C.C. Mid West,* 990 F.Supp. at 919. That is, ERISA cases frequently involve situations in which an individual seeks to recover plan benefits, enforce his or her rights under a plan, and/or clarify his or her rights to future benefits under a plan. *See* 29 U.S.C. § 1132(a)(1)(B). Thus, courts often are able to limit their jurisdictional discussions to the displacing effect of § 1132(a)(1)(B). *See, e.g., Warner,* 46 F.3d at 535; *Switzer v. Hayes Wheels Int'l, Inc.,* 976 F.Supp. 692, 695 (E.D.Mich.1997); *Hamburger v. Desoutter, Inc.,* 886 F.Supp. 616, 619–21 (E.D.Mich.1995).

Numerous circuit courts have applied the complete preemption doctrine of *Metropolitan Life* to claims arising under provisions of § 1132(a) other than subsection 1132(a)(1)(B). *See, e.g., Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 208 F.3d 1170 (9th Cir.2000) (cause of action failing within § 1132(a) is displaced); *Wood v. Prudential Ins. Co. of America,* 207 F.3d 674 (3rd Cir.2000) (§ 1140 discrimination claim, as enforced under § 1132(a), completely preempts state claim); *Romney v. Lin,* 94 F.3d 74, 80–81 (2nd Cir.1996), *cert. denied,* 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997) (claim under § 1132(a)(3) is completely preemptive); *Anderson v. Electronic Data Sys. Corp.,* 11 F.3d 1311, 1315 (5th Cir.), *cert. denied,* 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994) (claims under § 1132(a)(2) and (3) completely preempt

state causes of action). Indeed, in *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999), the Sixth Circuit decided that, pursuant to *Metropolitan Life*, claims for breach of fiduciary duty which fall under § 1132(a)(2) completely preempt state law for purposes of removal jurisdiction. The *Smith* court reasoned that "ERISA is at least as concerned with defining and standardizing the duties of a fiduciary as it is with providing for recovery of benefits." *Id.* at 613. Accordingly, § 1132(a)(2) claims are as inherently federal in character, and as completely preemptive, as claims under § 1132(a)(1)(B). *Id.* at 613–14.

Guided by the Sixth Circuit's decision in *Smith* and the other cases cited above, this Court must ascertain whether any of Kalo's claims arise under § 1132(a)—and, therefore, are removable—despite the fact that Kalo's complaint does not mention ERISA. This Court will address each of Kalo's claims separately.[1]

## B.  Count One—Age Discrimination

In the first cause of action, Kalo alleges that Moen engaged in age discrimination by treating younger employees better than him. *See* O.R.C. § 4112.02 (prohibiting employer from discriminating on basis of age). Specifically, Kalo claims that while Moen discharged him for performing a "government job," the company did not terminate younger employees for engaging in the same conduct. *See* Complaint, at ¶ 27. Kalo further alleges that it was improper for Moen to terminate him when he was only a year away from being eligible for early retirement, and only six years away from being fully vested in his pension plan. *Id.* at ¶¶ 28–29.

Moen contends that this claim falls within 29 U.S.C. § 1140 (codified ERISA § 510), which provides as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140. Section 1140 further provides, "The provisions of section 1132 of this title shall be applicable in the enforcement of this section." *Id.* The United States Supreme Court has observed that § 1140 "protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted).

Kalo does not dispute that the benefits referred to in his complaint are associated with an ERISA-governed plan. He argues, however, that ERISA does not displace his state age discrimination claim in light of the Sixth Circuit's decision in *Warner*. This Court agrees.

Although Count One implies, in part, that Moen discharged Kalo in order to avoid paying him early retirement and full pension benefits, the Sixth Circuit's binding decision in *Warner* compels the conclusion that this claim is not tantamount to a civil enforcement action under § 1132(a). In *Warner*, "the defendant-employer threatened to discharge the plaintiff because of his age unless he took early retirement." *Warner*, 46 F.3d at 534. The Sixth Circuit acknowledged that the plaintiff was seeking "to set aside and escape from the early retirement agreement," but

---

1. Although the parties consider Kalo's claims collectively, this Court finds it appropriate to address the displacement effect of each claim separately. *Accord Smith v. Provident Bank,* 170 F.3d 609, 613–14 (6th Cir.1999) (breach of fiduciary claim is completely preemptive, and supplemental jurisdiction exists over remaining claims).

nevertheless found that the action was "a straight state age discrimination case," and, therefore, not completely preempted by ERISA. *Id.* Even though the *Warner* court limited its analysis to the displacement effect of § 1132(a)(1)(B)—that is, the court did not determine whether § 1140, as enforced through § 1132(a), completely preempted the plaintiff's claim—the court did consider the employer's apparent attempt to manipulate the provision of early retirement benefits. *Id.* The court found the issue of ERISA-covered benefits to be wholly incidental to the essential allegations of age discrimination. *Id.*

■ Similarly, in Count One of the present case, Kalo essentially alleges that Moen discharged him as a result of his age. Kalo has set forth specific allegations of disparate treatment based exclusively on discriminatory animus. He claims that Moen chose to discharge him for engaging in routine conduct, while the company did not discipline younger employees for engaging in the same or similar conduct. Thus, Kalo's first claim does not hinge on the theory that Moen was attempting to prevent him from obtaining plan benefits; the claim primarily involves allegations that the company discriminated against him on the basis of his age by treating younger employees better. It follows, then, that Kalo's first cause of action does not necessarily arise under §§ 1140 and 1132(a) of ERISA. For this reason, and in light of *Warner,* this Court is constrained to conclude that § 1132(a) does not completely preempt Kalo's age discrimination claim, and, therefore, that this claim does not confer removal jurisdiction upon this Court.[2] *See id.; Hamburger,* 886 F.Supp. at 620.

2. This Court is not deciding at this time whether 29 U.S.C. § 1144, ERISA's ordinary preemption clause, preempts this claim or Kalo's other claims. The current analysis is limited to the applicability of the completion preemption doctrine. Some circuits require that for complete preemption to apply, courts must find both that (1) § 1144(a) preempts the claim, and (2) the claim falls within the scope of § 1132(a). *See, e.g., Rutledge v. Sey-*

## C. Count Two—Disability Discrimination

■ In Count Two, Kalo claims that Moen discriminated against him on the basis of his disability. Kalo alleges that Moen violated Ohio Revised Code § 4112.02 by discharging him because he is handicapped, or perceived to be handicapped.

As with the age discrimination claim, it is not proper to characterize Kalo's disability discrimination claim as one arising under § 1132(a). Kalo essentially alleges that Moen knew of his disability, or perceived him to be disabled, and that the company terminated him as a result of discriminatory animus. Kalo supports this claim with specific allegations regarding his injuries and the medical restrictions that were placed on his employment. Indeed, Kalo does not even mention his impending retirement benefits in Count Two of the complaint. Pursuant to *Warner,* then, this "is a straight state ... discrimination" claim that is not displaced by the civil enforcement provisions of ERISA. *Warner,* 46 F.3d at 534.

## D. Count Three—Violation of Public Policy

Kalo's third cause of action is entirely different. Unlike the first two counts, Count Three does not involve allegations that Moen discriminated against Kalo on the basis of his membership in a protected group. Rather, the third claim rests solely on the theory that Moen terminated Kalo in order to avoid giving him benefits to which he soon would be entitled. That is, Kalo alleges that Moen terminated him for

*farth, Shaw, Fairweather & Geraldson,* 208 F.3d 1170, 2000 WL 347161, at *3 (9th Cir. 2000). The Sixth Circuit appears to cut to the chase when removal is the sole issue before the court, asking only whether the claim falls within the civil enforcement provisions of § 1132(a). *See Warner,* 46 F.3d at 535 (§ 1144(a) defense in nonremovable cases should be decided by state court).

the following reasons: (1) because he was contemplating taking a long-term disability leave; (2) because he "was only a year away from eligibility for early retirement which would have required Defendant Moen to provide Plaintiff with full heath [sic] and medical benefits from the date of his retirement until his death"; and (3) because he "was only six years away from being fully vested in his pension plan." Complaint, at ¶¶ 36–38. Kalo claims that Moen violated Ohio public policy by terminating him on the basis of these three motives.[3]

The Sixth Circuit has not yet had the opportunity to consider whether a claim such as this one necessarily arises under ERISA's civil enforcement provisions. However, the Third Circuit recently addressed the issue in an opinion that this Court finds persuasive. In *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674 (3rd Cir.2000), the Third Circuit concluded that if a claim contains allegations that an employer terminated a person based only on "a benefits-defeating motive", then the claim is completely preempted by ERISA §§ 510 and 502(a) (codified at 29 U.S.C. §§ 1140 and 1132(a)). *Id.* at 677. As discussed previously, § 1140 prohibits an employer from discharging or otherwise discriminating against a plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140. Section 1140 is enforced exclusively through § 1132. *Id.* ("The provisions of section 1132 ... shall be applicable in the enforcement of

this section."); *Wood*, 207 F.3d at 677 ("Section 510 of ERISA does not stand alone; by its terms it gains its enforcement vitality from Section 502."). Indeed, the Supreme Court has stated that § 1132(a) is "the exclusive remedy for vindicating § 510–protected rights...." *Ingersoll–Rand*, 498 U.S. at 145, 111 S.Ct. 478.[4]

■ Because the gravamen of Kalo's third claim is that Moen discharged him in order to prevent him from attaining plan benefits, this claim falls squarely within the proscriptions of § 1140. This claim is distinguishable from Kalo's first two Counts (and the cause of action at issue in *Warner*) because it rests primarily—indeed, exclusively—on the allegation that Moen harbored a benefits-defeating motive in terminating Kalo's employment. *Accord Wood*, 207 F.3d at 677 ("we find nothing in his complaint other than an allegation that [the employer] terminated [his] employment to avoid paying health and retirement benefits"). Moen's desire to interfere with the attainment of benefits is not merely incidental to the claim. Thus, despite Kalo's artful attempt to style the third claim as a violation of Ohio public policy, it necessarily arises under § 1140 and, accordingly, the enforcement provisions of § 1132(a). *Id.; Wood*, 207 F.3d at 677–79.

As an enforcement action pursuant to §§ 1140 and 1132(a), Kalo's third cause of action is completely preempted by ERISA and removable on the basis of this Court's federal-question jurisdiction. *See Metropolitan Life*, 481 U.S. at 66–67, 107 S.Ct.

---

**3.** Although both age- and disability-based discrimination would support a wrongful discharge claim as a violation of public policy under Ohio law, Kalo clearly does not allege that Moen violated Ohio public policy by discriminating against him on the basis of his age and/or disability. *See, e.g., Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308, 320–29 (Ohio 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997) (discussing public policy exception to employment-at-will doctrine). He claims only that Moen violated public policy by dis-

charging him because of his imminent receipt of employment benefits. ·

**4.** *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), is not a complete preemption case; it is an ordinary/conflict preemption case. Nonetheless, it strongly supports the conclusion that once a claim is deemed to be a § 1140 action, it is exclusively enforced through § 1132(a), and, therefore, is removable. *Id.* at 145, 111 S.Ct. 478 (referencing completely preemptive effect of § 1132(a) in context of § 1140).

1542 (complete preemption exception to well-pleaded complaint rule applies to § 1132(a) case); *Wood*, 207 F.3d at 677–79 (same); *Smith*, 170 F.3d at 613 (same). Kalo's motion to remand the case must therefore be denied.

To facilitate the proper posturing of this case, Kalo must file an amended complaint to, at a minimum, re-characterize his third claim as one arising under the civil enforcement provisions of ERISA. This Court orders Kalo to file an amended complaint within ten business days of the date of this order.

### E. Supplemental Jurisdiction

█ In light of the previous discussion, this Court possesses original subject matter jurisdiction over Count Three of Kalo's complaint. It is well-established that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a). Counts One and Two are "so related" to the federal cause of action that this Court will exercise supplemental jurisdiction over those claims at this time. *Id.*

### III.

For the foregoing reasons, this Court concludes that ERISA completely preempts the plaintiff's third cause of action and that removal of this case was proper. Accordingly, this Court denies the plaintiff's motion to remand the case, and orders the plaintiff to file an amended complaint within ten business days of the date of this order to comport with the conclusions stated herein.

The Court will send notice of a case management conference in a separate order.

IT IS SO ORDERED.